**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

| | | |
|---|---|---|
| **CAPSA SOLUTIONS LLC** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 2:22cv65-HSO-BWR** |
| | § | |
| | § | |
| **HOWARD INDUSTRIES, INC.** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT
HOWARD INDUSTRIES, INC.'S MOTION [95] FOR ATTORNEYS' FEES**

In this multi-year, multi-patent infringement suit, Defendant Howard

Industries, Inc. ("Defendant" or "Howard") seeks an award of attorneys' fees.   *See*

Mot. [95]; Mem. [96]; Reply [113].   Plaintiff Capsa Solutions LLC ("Plaintiff" or

"Capsa") opposes this request, arguing that this case is not exceptional under 35

U.S.C. § 285 and that attorneys' fees should not be awarded.   *See* Resp. [109].

Upon review, the Court agrees that this case is not exceptional, and Defendant's

Motion [95] for Attorneys' Fees should be denied.

## I.   BACKGROUND

On May 12, 2022, Capsa filed a Complaint [1] alleging that Howard was

infringing seven different patents it owned: U.S. Patent No. 7,594,668 (the "'668

Patent"); U.S. Patent No. 8,215,650 (the "'650 Patent"); U.S. Patent No. 8,109,527

(the "'527 Patent"); U.S. Patent No. D762,339 (the "D'339 Patent"); U.S. Patent No.

9,039,016 (the "'016 Patent"); U.S. Patent No. 10,159,337 (the "'337 Patent"); and

U.S. Patent No. 10,299,582 (the "'582 Patent").   *See* Compl. [1] at 4.[1]   Capsa filed

---

[1] The Court will cite to the page numbers generated by CM/ECF.

an Amended Complaint [19] on October 17, 2022, re-alleging infringement of the same seven patents. *See* Am. Compl. [19] at 4. Both parties manufacture and sell medical carts, *see id.* at 2; Answer [25] at 4, and the patents at issue "generally relate to mobile accessory carts that carry computers to provide portable workstations," R. & R. [70] at 4 (Report and Recommendation of Special Master).

Each infringement claim was ultimately dismissed at varying stages of the case's lifespan. On May 24, 2023, Plaintiff dismissed the infringement claims regarding the '337, '582, and '016 Patents (except for claim 20 of the '016 patent) after the parties agreed to certain stipulations. *See* Stipulation [43]; Order [44]. On October 13, 2023, Plaintiff similarly withdrew its claims regarding the '527 Patent after additional stipulations were reached. *See* Stipulation [67]; Order [68]. A Special Master was appointed to conduct claim construction proceedings in July 2023, *see* Notice [50], and he submitted his Report and Recommendation [70] to this Court in December 2023, *see* R. & R. [70].

Approximately four months later, on April 2, 2024, Defendant filed a Motion [79] to Stay Proceedings pending *Inter Partes* Review ("IPR") before the United States Patent Office's Patent Trial and Appeal Board (the "PTAB") concerning the '668 and '650 Patents. *See* Mot. [79]; Resp. [82]. The Court entered an Order [84] administratively closing the case pending final disposition of the IPR proceedings in April 2024. *See* Order [84]. During the interim, on September 3, 2024, Plaintiff dismissed its infringement claims with respect to claim 20 of the '016 Patent and the '339 Patent based on additional stipulations. *See* Stipulation [85]; Order [86]. The PTAB issued its Final Written Decisions on February 18, 2025, finding

2

unpatentable all challenged claims of the '668 and '650 Patents.   *See generally* Ex. [95-26] ('668 Patent Decision); Ex. [95-27] ('650 Patent Decision).   Accordingly, the parties filed a joint Motion [88] to reopen the case and – because all claims had been disposed of – dismiss it as moot.   *See* Mot. [88].   The Court granted the Motion [88] and entered a Final Judgment [91] on September 2, 2025.   *See* Final J. [91].

Capping off the litigation, on October 15, 2025, Howard filed a Motion [95] for Attorneys' Fees, claiming that this is an exceptional case worthy of such an award under 35 U.S.C. § 285 due to Plaintiff's weak substantive positions and its unreasonable excuses for prolonging dismissal of its claims.   *See* Mem. [96] at 9-29; Reply [113] at 4-10.   Plaintiff maintains that it acted reasonably throughout the case, that Defendant's own conduct weighs against awarding attorneys' fees, and that the Motion [95] asks the Court to speculate on matters never adjudicated.   *See* Resp. [109] at 8-37.

## II.   DISCUSSION

### A.    Relevant Legal Authority

The Patent Act, 35 U.S.C. § 1, *et seq.*, authorizes patentees to enforce their rights through infringement actions.   *See* 35 U.S.C. § 281.   "There is a strong presumption of validity for issued patents," *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370, 1377 (Fed. Cir. 1999) (citing 35 U.S.C. § 282), and there is also "a presumption that an assertion of infringement of a duly granted patent is made in good faith," *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1180 (Fed. Cir. 2018) (quotation omitted).   But this is not always the case, and "[t]he court in exceptional cases may award reasonable attorney fees to the

prevailing party."   35 U.S.C. § 285.

In rejecting an overly rigid formula for deciding whether to award attorneys' fees, the United States Supreme Court has held that:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.   District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. As in the comparable context of the Copyright Act, "'there is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'"

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (footnote omitted and cleaned up) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

Factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" can help steer a court's analysis.   *Id.* at 554 n.6 (quotation omitted).   But fee awards under § 285 are not meant to punish a losing party and should only serve "to prevent a party from suffering a 'gross injustice.'"   *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017); *see also Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020) (same).   In essence, a court is tasked with "a simple discretionary inquiry" that "imposes no specific evidentiary burden," *Octane Fitness, LLC*, 572 U.S. at 557, but does require the movant to "prove its case by a preponderance of the evidence," *OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, 68

4

F.4th 1285, 1291 (Fed. Cir. 2023) (citing *Octane Fitness, LLC*, 572 U.S. at 557-58).

B.    Effects of the Final Judgment [91]

1.    Prevailing Party Status

To be eligible for attorneys' fees, Howard must first establish that it is the "prevailing party."  35 U.S.C. § 285.  "[A] defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party,'" *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1304 (Fed. Cir. 2018) (quotation omitted); a dismissal with prejudice alone is sufficient, *see id.* at 1307-08.  Here, although the Court never resolved any dispositive motions or otherwise ruled on the merits, it dismissed the case with prejudice after all patent claims had either been voluntarily dismissed with prejudice or invalidated in IPR.  *See* Final J. [91].  In short, Defendant rebuffed Plaintiff's claims and is the prevailing party.  *See B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 679 (Fed. Cir. 2019) (finding that dismissal with prejudice for mootness was enough to confer prevailing party status); *Raniere*, 887 F.3d at 1303-08 (holding the same, but where the case was dismissed with prejudice for lack of standing).

2.    Review of Attorneys' Fees Based on Issues Not Litigated

On a similar note, the Court rejects Plaintiff's preliminary argument that it should decline to consider attorneys' fees because the substantive issues were never fully litigated, therefore preventing the Court from assessing the substantive strength of the parties' litigation positions without engaging in speculation.  *See* Resp. [109] at 10-12.  The court in *Thermolife International LLC v. GNC Corp.* remarked that similarly un-litigated issues were "an unusual basis for fees," but it

also emphasized a court's "wide latitude" on the matter and declined to hold that it is legally impermissible to award fees on a basis that was never fully adjudicated. 922 F.3d 1347, 1357 (Fed. Cir. 2019). Ultimately, this "exceptional-case question" is "a precondition to awarding fees against a losing party." *Id.* And since the Court will not award fees here, it need not dwell on the matter.

C.    Plaintiff's Conduct in Litigation

1.    The '668 and '650 Patents

a.    Litigation History

The '668 and '650 Patents were contested the longest. They went through claim construction by a Special Master, *see* R. & R. [70], separate IPR proceedings, *see* Ex. [95-26]; Ex. [95-27], and were the last claims dismissed, *see* Mot. [88]; Order [90]. The two patents are also closely related. Patent '650 was issued approximately three years after the '668 Patent and claims priority to it. *See* R. & R. [70] at 4; Ex. [95-27] at 4. Both "patents describe a medical cart with a height adjustable work platform" and use claim terms such as "work surface," "driver," and "actuator." R. & R. [70] at 4-6; *see also* Ex. [19-1] at 30-31; Ex. [19-2] at 30-31. Capsa's theory of infringement rested on its own claim construction of these and other terms; however, every challenged claim was ultimately found unpatentable under 35 U.S.C. § 103(a), *see* Ex. [95-26] at 3, 70-71; Ex. [95-27] at 3, 74-75, and the infringement claims in this Court were subsequently dismissed, *see* Mot. [88]; Order [90].

But Defendant contends that the '668 and '650 claims should have never been asserted in the first place because "key claim construction determinations from a

6

prior litigation foreclosed infringement by Howard." Mem. [96] at 9; *see also id.* at 19-21. Plaintiff counters that claim construction in the aforementioned case – *Rubbermaid Inc. v. Ergotron, Inc.*, No. 3:12-cv-416, 2014 WL 940685 (W.D.N.C. Mar. 11, 2014) – has no bearing on the reasonableness of its litigation here because that "previous order was vacated, Capsa was not a party to th[at] case, and the claim definitions from th[at] previous order are not binding on Capsa." Resp. [109] at 20.

b.    Analysis

As a general rule, "[a] district court's claim construction is not binding on any other court," *Ohio Willow Wood Co. v. Thermo-Ply, Inc.*, 769 F. Supp. 2d 1065, 1069 (E.D. Tex. 2011), and "[s]imply being on notice of adverse case law" during litigation is not enough to support an exceptionality finding later on, *Realtime Adaptive Streaming L.L.C. v. Sling TV, L.L.C.*, 113 F.4th 1348, 1358 (Fed. Cir. 2024). But nonbinding decisions construing similar patent claims as invalid can serve as a "red flag" for courts in assessing the reasonableness of a party's litigation position in a separate action. *See id.* at 1354-55 (affirming district court's determination that other cases invalidating essentially the same patent claims were "significant red flag[s]" which "should have featured prominently in [the plaintiff's] thinking about the present case" (quotation omitted)).

Howard argues that the claim construction in *Rubbermaid* is dispositive proof of Capsa's unreasonable litigation position. Mem. [96] at 19. "Rather than respect the prior court's constructions, Capsa set forth unreasonably broad constructions that had been rejected in the prior case." *Id.* But neither Plaintiff

7

nor this Court were bound by the claim constructions *Rubbermaid*, *see Fuji Photo Film Co. v. Int'l Trade Comm'n*, 386 F.3d 1095, 1101 (Fed. Cir. 2004) ("Since the respondents who are affected by the claim construction in the present proceedings were not parties to [an earlier claim construction] stipulation, they are not bound by it[.]"); *Ohio Willow Wood Co.*, 769 F. Supp. 2d at 1069, and the Court presumes, as it must, that Plaintiff was attempting to enforce valid patent rights in good faith, *see* 35 U.S.C. § 282(a); *Stone Basket Innovations, LLC*, 892 F.3d at 1180. Furthermore, the record supports a finding of reasonableness regarding Plaintiff's litigation position in two key respects.

First, the Court disagrees with Defendant's characterization that "the Special Master's Report and Recommendation adopted constructions of the '650 and '668 patent claims consistent with prior rulings." Mem. [96] at 15. In fact, in a number of instances the Special Master actually did the opposite. He considered and gave proper deference to prior rulings, *see* R. & R. [70] at 13, then recommended assigning the term "driver" its "plain and ordinary meaning," which aligned with neither of the parties' proposed definitions, nor with the definition adopted in the since-vacated *Rubbermaid* decision, *id.* at 20; *see also id.* at 16; *Rubbermaid*, 2014 WL 940685, at *3-4 (construing "'driver' . . . to mean a 'gas driven piston'"). For the phrase "an actuator for controlling the driver," not only did the Special Master recommend a new definition from that in *Rubbermaid*, but he also specifically rejected Defendant's argument that the term should be subject

8

to the pre-America Invents Act (the "AIA") 35 U.S.C. § 112(6).[2]   R. & R. [70] at 25 (construing the phrase to mean "device for controlling the driver"); *see also id.* at 20; *Rubbermaid*, 2014 WL 940685, at *6 (defining the term as a "button that controls gas flow of the gas driven piston" (quotation omitted)).   The Special Master even recommended adopting Plaintiff's construction of the term "movable platform" despite *Rubbermaid* providing a different definition.   R. & R. [70] at 39 (recommending construing the term under "its plain and ordinary meaning"); *see also id.* at 38; *Rubbermaid*, 2014 WL 940685, at *7 (defining the term "to mean 'movable surface at the top of the cart'").   At the very least, these constructions by the Special Master underscore the not unreasonable nature of Plaintiff's litigation position.

Second, although all challenged patent claims were later invalidated in the IPR for obviousness, the frontline patent behind this invalidation, U.S. Patent No. 6,493,220 B1 ("Clark '220"), was considered by the patent examiner and overcome in the original prosecutions of the '668 and '650 Patents.   *See* Ex. [95-26] at 31-33; Ex. [95-27] at 30-32; Standley Decl. [108-31] at 3 ("The Clark '220 reference was effectively cited during the original prosecution of the '668 and '650 Patents and was overcome . . . .   The [PTAB] subsequently found the '668 and '650 Patents unpatentable in view of the Clark reference, effectively overturning the allowance of the patents during the original prosecution . . . .").   In the Court's view, it was not

---

[2] The AIA took effect on September 16, 2012, but patents filed before the effective date are still subject to pre-AIA rules.   *See, e.g.*, *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 n.1 (Fed. Cir. 2014).

unreasonable for Plaintiff to pursue enforcement under the belief that the PTAB would not overturn its own patent examiner's previous findings.

2.     The D'339 Patent

a.     Litigation History

Plaintiff's D'339 Patent is a design patent covering a particular cart design which it believed Defendant was infringing with its own product.   *See* Am. Compl. [19] at 12-13; Ex. [19-4].   Defendant argued that its allegedly infringing cart constituted prior art to the D'339 Patent, thus "rendering [Plaintiff's] infringement claims futile from the start."   Mem. [96] at 22.   But this alone is not why Defendant now believes the case is exceptional.   It maintains that Plaintiff knew, or should have known, of this critical flaw, yet it "continued asserting the D'339 patent well after Howard informed Capsa, on multiple occasions, that the accused cart design was prior art to the D'339 patent."   *Id.*

> Howard informed and reminded Capsa that the accused Howard medical carts were prior art to the D'339 patent on at least six separate occasions throughout the case: (1) by producing a photograph on February 7, 2023, showing the Howard medical cart on public display; (2) in the Initial Invalidity Contentions served on March 6, 2023; (3) in a letter dated July 12, 2023; (4) in another letter dated August 7, 2023; (5) in an interrogatory response served on August 21, 2023; and (6) during a deposition [of Jared Huguet] on October 6, 2023.

*Id.* at 23-24 (citations omitted).

Particularly at issue are a trade show and corresponding photographs Howard sent Capsa.   Howard contends that its carts "were publicly displayed at the 2013 HIMSS Conference in New Orleans, LA, nearly a year before the D'339 patent's earliest priority date," *id.* at 23, that "Capsa should have discovered this

10

fact during its pre-suit investigation because Capsa itself attended this same trade show," *id.* (emphasis omitted), and that, moreover, "Howard provided evidence establishing the public display of the accused medical cart, including photographs with metadata corresponding to the date and GPS location of the public display and a witness who testified to the details of the public disclosure," *id.*

Despite receiving this information, Plaintiff did not immediately dismiss its claims.   Rather, after what Plaintiff characterizes as reasonable discovery, it "informed Howard of three facts that raised factual disputes and credibility issues with Howard's allegations with respect to the 2013 trade show."   Resp. [109] at 28. Plaintiff's concerns were:

> 1.) Howard's photos do not appear to show both of the handles in the down position as shown in the D '339 Patent (with no indication of whether or not the handles were fixed in the position shown in the photos or moveable); 2.) Howard failed to disclose the 2013 display of their accused cart to the U.S.P.T.O. when Howard later filed their own patent application to this cart in 2015 even though they had a legal duty to do so; 3.) through searches of past Webpages from Howard's Website . . . , Capsa determined that Howard did not begin to offer the medical cart allegedly shown at the 2013 trade show for sale until April, 2015 – almost two years later . . . .

*Id.* (footnote omitted); *see also* Ex. [95-12] at 3.

Plaintiff claims that "[t]hese conflicting facts created issues of fact and credibility issues that Capsa had a right to investigate through discovery."   Resp. [109] at 29.   But it nonetheless agreed to drop the claims if Defendant would

> provide a signed declaration from a Howard employee who attended the 2013 trade show that the 2013 trade show medical carts had handles that could in fact be moved to a down position, and were for some substantial portion of time both in a down position for the public to see during the open hours of the 2013 trade show.

11

Ex. [95-12] at 4; *see also* Resp. [109] at 30.   Plaintiff received this declaration in late August 2024, *see* Taylor Decl. [108-9] at 2; Ex. [108-8] at 2, and the parties filed a Stipulation [85] dismissing the D'339 Patent claims on September 3, 2024, *see* Stipulation [85].

b.   Analysis

i.   The Trade Show Photographs

Plaintiff raised reasonable concerns regarding the trade show photographs. A key element of Plaintiff's cart design was handles stationed in a downward, bow-shaped position.   *See* Ex. [19-5] at 4-6.   However, the trade show photograph depicts one cart handle in a flat position parallel to the floor, and the other handle at an upward angle.   *See* Ex. [95-4] at 2; Mem. [96] at 23.   At a later date, Defendant sent Plaintiff additional photographs with metadata from the trade show, but these images again do not depict Defendant's cart with both handles positioned as described in the D'339 Patent.   *See* Ex. [95-21] at 4-6.   This lack of clarity supports a finding that Plaintiff was not unreasonable in not immediately accepting Defendant's argument and dismissing its claims.

Defendant's nondisclosure of the 2013 trade show display in its own patent application from 2015 (the "Huguet Patent") is another reasonable explanation for why Plaintiff waited before dropping its claims.   *See* Ex. [108-5] (Huguet Patent); Standley Decl. [108-31] at 3-4.   While the Huguet Patent was never at issue in this case, an award of attorneys' fees under 35 U.S.C. § 285 requires considering the "totality of the circumstances," *Octane Fitness*, 572 U.S. at 554, and courts are leery of interested parties mischaracterizing prior art for self-gain, *see Mosaic Brands,*

12

*Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1363 (Fed. Cir. 2022) (holding that oral testimony from inventors claiming that their work predates an asserted patent "must be corroborated" to guard against fraud and mischaracterizations of the past).    Far from accusing Defendant of any wrongdoing or mischaracterization, the Court merely agrees with Plaintiff that "[b]ecause Howard did not consider their 2013 public display prior art to their own patent, Capsa [could] reasonably assume[] it was not prior art to the D '339 Patent . . . ."    Resp. [109] at 29.

ii.    Deposition of Jared Huguet

Defendant argues that the later deposition of Jared Huguet ("Mr. Huguet") should have dispelled any concerns Plaintiff held regarding the photographs.    *See* Mem. [96] at 23-24; Ex. [95-13] at 2-3 (quoting Mr. Huguet's deposition transcript and arguing that Plaintiff must dismiss its claims).    But Mr. Huguet was both a Howard employee and an inventor named on Howard's competing patent.    *See* Ex. [108-5] at 1; Huguet Depo. Tr. [112-1] at 8; Mem. [96] at 24.    As such, the deposition testimony itself carries certain corroboration issues.

> When a party claims that its own invention predates, and thereby anticipates, a patent asserted against it, the oral testimony of the inventor of the purported prior art must be corroborated.  This is to protect against fraud and provide an additional safeguard against courts being deceived by inventors who may be tempted to mischaracterize the events of the past.    Possible corroborating evidence, from most to least probative, includes documentary and physical evidence created at the time of conception or reduction to practice, circumstantial documentary evidence about the inventive process, and oral testimony by someone other than the inventor.

*Mosaic Brands, Inc.*, 55 F.4th at 1363 (internal citations, quotation marks, and footnote omitted) (cleaned up).

13

Although the trade show photographs could count as other physical evidence corroborating Mr. Huguet's testimony, *id.*, they had their own issues, even in light of the metadata Defendant provided,[3] *see* Ex. [95-21] at 2-3.   Notwithstanding the deposition testimony, Defendant argues that Plaintiff could have corroborated the accuracy of the alleged prior art reference because its own employees attended the trade show.   *See* Ex. [95-19] at 3; Mem. [96] at 14, 23.   But the Court is reluctant to impute knowledge to Plaintiff based upon the presence of unidentified employees at a trade show held over nine years before this case began, and moreover, a patentee is generally not obligated to assist in invalidating its own patent.   *See* 35 U.S.C. § 282(a).

In fact, if Defendant had sought summary judgment on this claim, it would have had the burden of invalidating Plaintiff's Patent D'339 by clear and convincing evidence.   *See id.* ("The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999) ("Issued patents have a strong presumption of validity in infringement proceedings.   Hence, an accused infringer who defends on grounds of patent invalidity bears the burden of showing patent invalidity by clear and convincing evidence." (citation omitted)).   In *Mosaic Brands, Inc.*, the appellate court held that "the [d]istrict [c]ourt correctly concluded that the evidence was sufficient to satisfy the corroboration requirement," but it "erred by

---

[3] The metadata here only confirmed when and where the photographs were taken.   *See* Ex. [95-21] at 2.   It did not speak to the other concerns Plaintiff raised.   *See* discussion *supra* Section II.C.2.b.i; Resp. [109] at 28; Ex. [95-12] at 3.

14

proceeding to grant summary judgment of anticipation."   55 F.4th at 1364.

> Finding that [the plaintiff] presented legally *sufficient* evidence to corroborate the inventor's testimony does not necessarily mean that [the plaintiff]'s evidence would also lead every reasonable factfinder – taking the evidence in the light most favorable to [the defendant], as the non-moving party – to find by clear and convincing evidence that [anticipation occurred] . . . .
>
> Here the corroborating documents are only persuasive if the factfinder determines [the inventor] is credible.   [The defendant] has identified specific facts in the record that create doubt as to [the inventor]'s credibility and, relatedly, as to the authenticity of the documents [the plaintiff] offered as corroboration of [the inventor's] testimony.

*Id.* at 1364-65 (emphasis in original).

For the reasons discussed, the same is true here: Plaintiff identified facts in the record casting doubt on the deposition testimony and trade show photographs. *See* Resp. [109] at 28; Ex. [95-12] at 3.   It is unclear whether Defendant would have succeeded in dismissing these claims during litigation, and the Court cannot say it was exceptional for Plaintiff to not drop a claim that may have survived summary judgment.   *Cf. Pirri v. Cheek*, 851 F. App'x 183, 188 (Fed. Cir. 2021) (per curiam) (finding no abuse of discretion in award of attorneys' fees where the plaintiff advanced arguments that "were neither grounded in fact nor supported by law," made "outlandish accusations," and pushed "frivolous arguments after the district court had definitively rejected them").

iii.     Defendant's Other Communications

The other communications in which "Howard informed and reminded Capsa that the accused Howard medical carts were prior art" amount to simple attorney argument.   Mem. [96] at 23.   In general, notice of frivolity can be a factor in

awarding attorneys' fees.   *See Thermolife Int'l LLC*, 922 F.3d at 1357 ("[W]e have stressed that one consideration that can and often should be important to an exceptional-case determination is whether the party seeking fees provided early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior." (quotation omitted and cleaned up)).   But Plaintiff has a right to enforce its patents, *see* 35 U.S.C § 281, and the Court does not find it unreasonable or exceptional that Plaintiff persisted despite receiving initial invalidity contentions, *see* Ex. [95-5] at 17, 89-93, interrogatory answers, *see* Ex. [95-10] at 7-10, and letters from defense counsel demanding that it dismiss its claims, *see* Ex. [95-9] at 3-7; Ex. [95-19] at 3.   If the Court were to hold otherwise based on this record, then practically every defendant in a patent infringement action would be eligible for attorneys' fees – undermining the "exceptional" nature of such an award.   *See Realtime Adaptive Streaming L.L.C.*, 113 F.4th at 1357-58 ("If [] a notice letter were sufficient to trigger § 285, then every party would send such a letter setting forth its complaints at the early stages of litigation to ensure that—if it prevailed—it would be entitled to attorneys' fees.").

As vocal as Defendant was in its communications, so too was Plaintiff.   On multiple occasions Plaintiff raised its concerns regarding the evidence Defendant provided and explained what information it would need to receive before agreeing to dismiss its claims.   *See* Ex. [108-3] at 3-4 (letter from Plaintiff to Defendant in July 2023 citing *Mosaic Brands, Inc.*, and explaining its concerns regarding Defendant's trade show evidence, specifically noting that Plaintiff had "not been provided any sales information, invoices, manufacturing or build information about the alleged

16

anticipatory cart"); Ex. [108-7] at 1 (letter from Plaintiff to Defendant in October 2023 again citing *Mosaic Brands, Inc.* and listing similar corroboration concerns); Ex. [95-12] at 4 (letter from Plaintiff in April 2024 stating that it would dismiss the D'339 Patent claims if Defendant provided a signed declaration averring to certain information).   Based on this record, Defendant has not shown that Plaintiff litigated the D'339 Patent in an unreasonable manner.

3.      The '527 Patent

a.      Litigation History

The '527 Patent covers a medical cart with an adjustable connection between the keyboard and mouse platforms, allowing the user to adjust "the angle of the first platform relative to the second platform."   Ex. [19-3] at 2.   Defendant argues that "[n]one of the accused Howard medical carts include" an adjustable connection as described in Plaintiff's patent.   Mem. [96] at 25; *see also* Ex. [95-3] at 5 (Defendant's case overview presentation from September 2022 stating that the adjustable connection "is not a feature of the accused Howard carts.   Instead, the mouse platform tilts with the keyboard tray" (emphasis omitted)).   Defendant maintains that "this fact should have been readily apparent from Capsa's pre-suit inspection of the accused Howard carts."   Mem. [96] at 26.

Plaintiff offers a letter dated July 21, 2023, in which it called Defendant's attention to a Howard cart that seemingly offered an adjustable platform connection between the keyboard and mouse pad's trays similar to the connection claimed in the '527 Patent.   *See* Ex. [108-3] at 3; Resp. [109] at 31.   In response, Defendant explained that the product in question was a Howard cart last sold in March 2016

and that it "has not offered this option on any cart made or sold after that date."
Ex. [95-19] at 3.   Plaintiff viewed this response skeptically, stating that after it
notified Defendant of the cart in question, Defendant "changed [its] tune from"
arguing that it never made such a product to claiming that it never sold the product
within the patent damages period.   Resp. [109] at 31-32.

Regardless, once Defendant stipulated to the fact that it "has not sold or
offered for sale the negative tilt keyboard option . . . at any time during the six
years prior to the filing of the Complaint . . . and that Defendant has no current
plans to sell or offer for sale a product with the negative tilt keyboard," Stipulation
[67] at 1-2, Plaintiff agreed to dismiss the '527 Patent claims, *see id.*; Ex. [108-7] at
2; Order [68] (dismissing the '527 Patent on October 16, 2023).   But Plaintiff
maintains that Defendant's alleged "back-pedal[ling]" highlights its reasonable
basis for maintaining the infringement action.   Resp. [109] at 31.

b.    Analysis

Defendant likens Plaintiff's conduct to that of the patentee in *Lumen View
Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329 (S.D.N.Y. 2014), *aff'd*, 811
F.3d 479 (Fed. Cir. 2016).   *See* Mem. [96] at 26.   In *Lumen*, the court awarded
attorneys' fees where "the most basic pre-suit investigation would have revealed"
that the defendant's product was not infringing on the plaintiff's patent.   24 F.
Supp. 3d at 336.   But unlike in *Lumen*, Plaintiff's initial discovery here revealed a
Howard cart that appeared to possess an adjustable platform component protected
by the '527 Patent – a component that Defendant claimed none of its products
possessed.   *See* Ex. [108-3] at 3; Ex. [95-3] at 6; Ex. [95-19] at 3.   It is not clear

18

from the record that Plaintiff failed to conduct any serious pre-suit investigation, so this argument does not support an award of attorneys' fees. *Cf. Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306-07 (Fed. Cir. 2017) (affirming award of attorneys' fees where the plaintiff advanced arguments that "were *directly contradicted* by the record evidence [it] had obtained through early discovery" and "marched onward with a view of its case that was not supported by its witnesses" (emphasis added and quotations omitted)); *EscapeX IP, LLC v. Google LLC*, 159 F.4th 1360, 1366 (Fed. Cir. 2025) (affirming award of attorneys' fees where the court found that the plaintiff's "fail[ure] to conduct an adequate pre-suit investigation is well-supported in the record"), *cert. denied*, 224 L. Ed. 2d 528 (Apr. 27, 2026).

Defendant also makes much of the timing of Plaintiff's voluntary dismissal. "Capsa waited to accept the inevitable dismissal of the '527 patent until just before the hearing before the Special Master," Mem. [96] at 26, at which point Defendant had already "incurred substantial expense[s] in briefing and preparing to argue its claim construction," *id.* at 27. But five months after the parties stipulated to dismissal, Defendant, in its Motion [79] to Stay Proceedings, represented to the Court that "the case is still in its early stages. The parties have not completed fact discovery, expert reports have not been drafted, and dispositive motions have not been filed. The most burdensome work in this case thus remains to be done[.]" Mem. [80] at 15; *see also* Stipulation [67].

Plaintiff should not be sanctioned for dismissing claims relatively early in litigation once its own investigation revealed that such action was appropriate. *See*

19

*SL Waber, Inc. v. Am. Power Conversion Corp.*, 135 F. Supp. 2d 521, 527 (D.N.J. 1999) ("After pretrial discovery revealed the weaknesses of its claims, the plaintiff may well have decided in good faith to minimize litigation expense by foregoing its claims and by taking a voluntary dismissal.   Such a move should not be discouraged by the threat of imposing attorney fees." (cleaned up)).   The Court finds that Plaintiff's conduct with respect to the '527 Patent does not support an award of attorneys' fees.

4.      The '337, '582, and the '016 (Except Claim 20) Patents

a.      Litigation History

The '337, '582, and '016 Patents were the first patents to be dismissed, *see* Stipulation [43]; Order [44], and they all cover various medical cart embodiments with automatic height adjustment features, *see* Ex. [19-5] at 1; Ex. [19-6] at 1; Ex. [19-7] at 1.   Defendant argues that Plaintiff's litigation position with respect to these patents "depended on unreasonable and improperly broad claim constructions of critical claim limitations disclosed by the prior art" found in U.S. 2007/0228680 A1 (the "Reppert Patent").   Mem. [96] at 27; *see also* Ex. [95-16].   Defendant briefly detailed these points in its case overview slideshow from September 2022. *See* Ex. [95-3] at 4-5.

Plaintiff counters that it "asserted these patents in good faith based on evidence of infringement reasonably ascertained from various Howard product brochures."   Resp. [109] at 33.   Plaintiff cites its preliminary infringement contentions, where it identified a Howard cart and explained how it understood that product to be infringing on the '337, '582, and '016 Patents.   *See* Ex. [112] at 32-48.

20

However, on May 24, 2023, Plaintiff voluntarily dismissed these patents from the case (except claim 20 of the '016 Patent) once Defendant stipulated that its products do not contain – and have not contained within the past six years – the same height adjustment features claimed in Plaintiff's patents.   *See* Stipulation [43] at 1-2; Order [44].

b.    Analysis

This does not appear to be an exceptional example of patent litigation. Plaintiff sued Defendant because it believed that certain carts Howard was offering for sale infringed on its own patents.   *See* Am. Compl. [19] at 13-16.   To reach that conclusion, Defendant claims that Plaintiff applied unreasonably broad claim constructions that would have been invalidated by prior art references.   *See* Mem. [96] at 27; *see also* Ex. [95-16].   Plaintiff counters that Defendant's own "allegations of invalidity are based on an improperly broad reading of the claim terms" in relation to the Reppert Patent.   Resp. [109] at 33-34.   Without wading into claim construction territory at this stage, Plaintiff articulated a not unreasonable basis for bringing its infringement claims.   *See* Ex. [112] at 32-48.   Some of these claims may have been weaker than others, but that is not the standard.   *See 10Tales, Inc. v. TikTok Inc.*, No. 21-CV-03868-VKD, 2024 WL 4775745, at *2 (N.D. Cal. Nov. 12, 2024) ("A fees award under § 285 is not meant as a penalty for weak arguments."). Attorneys' fees are therefore inappropriate.

Defendant again calls attention to the timing of Plaintiff's dismissal, lamenting that "Capsa maintained its assertions of the '337, '582, and '016 patents until May 24, 2023, just two days before claim construction briefing without ever

21

substantively defending its allegations . . . ." Mem. [96] at 28-29. But Plaintiff attempted to substantiate its allegations in its preliminary infringement contentions, *see* Ex. [112] at 32-48, and the claims were dismissed nearly ten months prior to Defendant's characterization that the case was still in its "early stages," Mem. [80] at 15. The patents were also dismissed not long after the pleadings stage had closed. *See* Answer [29] (last responsive pleading filed on November 29, 2022). This argument is unpersuasive.

5.      Claim 20 of the '016 Patent

a.      Litigation History

Claim 20 of the '016 Patent ("Claim 20") includes a means-plus-function claim term for "automatically adjusting a height of the [cart's] platform." Ex. [19-5] at 46. Like the '337, '582, and remainder of the '016 Patents, Defendant argues that the assertion of Claim 20 was baseless from the outset because "Capsa's construction of the '016 patent was similarly overbroad . . . . Capsa had no way to construe this . . . claim term without running afoul of" the Reppert Patent. Mem. [96] at 28; *see also* Ex. [95-9] at 2-3. During litigation, Plaintiff argued that the means-plus-function claim term should apply to three separate embodiments. *See* Dkt. [42-1] at 23-25 (Joint Claim Construction Chart); Ex [95-9] at 2. Two of the three embodiments were resolved in the Stipulation [43] discussed previously, but the parties continued to debate the third embodiment. *See* Ex. [95-9] at 2-3. Defendant maintained that Claim 20 did not cover the third embodiment, but even if it did, it would have been anticipated by the Reppert Patent. *See id.* at 3.

Not surprisingly, Plaintiff disagreed with Defendant's understanding of

22

Claim 20 during litigation, *see* Ex. [108-3] at 2, and it disagrees now with Defendant's characterization that it took unreasonable positions, *see* Resp. [109] at 34-36.   Plaintiff cites the Report and Recommendation [70] of the Special Master. *Id.* at 35.   Claim 20 was referred to the Special Master for claim construction in addition to the '668 and '650 Patents, *see* R. & R. [70] at 56-62, and the Special Master ultimately "recommend[ed] rejecting Defendant's construction" because its "proposed structure improperly excludes the structure of the third embodiment," *id.* at 61.

Despite this favorable recommendation, Plaintiff expressed a willingness to voluntarily dismiss its claim.   In a letter to defense counsel in April 2024, Plaintiff stated:

> We understand from your discovery produced in this case that Howard has discontinued its automatic height adjustment selection feature accused under this patent.   Capsa is willing to dismiss this patent from the case, with prejudice, at no cost to Howard, if Howard agrees not to reintroduce the subject feature until after January 1, 2027.

Ex. [95-12] at 5.   Although the parties never agreed to such terms, "in order to narrow the issues in the interest of judicial economy," Resp. [109] at 36, Plaintiff voluntarily dismissed Claim 20 along with the D'339 Patent on September 3, 2024, *see* Stipulation [85].

b.    Analysis

As the Court has discussed, it cannot say that Plaintiff lacked a reasonable basis for initiating an infringement action with respect to the '016 Patent.   *See* discussion *supra* Section II.C.4.b.; Ex. [112] at 37-39.   And Plaintiff was not unreasonable in its continued litigation of Claim 20, as the Special Master agreed

that the claim term should include the structure of the third embodiment.    *See* R. & R. [70] at 61.    To the extent that the Reppert Patent may have anticipated Claim 20, that question was never resolved.    However, the patent examiner issued the '016 Patent despite disclosure of the Reppert Patent in prosecution.    *See* Resp. [109] at 34 n. 19; Mem. [96] at 28; Ex. [19-5] at 3.    Such evidence suggests a lack of anticipation and speaks to the reasonableness of Plaintiff's litigation position.    *See BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1402 (Fed. Cir. 2022) ("When prior art is listed on the face of a patent, the examiner is presumed to have considered it." (quotations omitted and cleaned up)).    The Court is not persuaded that Plaintiff's litigation position was frivolous, baseless, or otherwise exceptional under 35 U.S.C. § 285.

6.    Additional Considerations

a.    Motivation

Courts are vigilant of patent holders "bring[ing] meritless claims to 'extract a nuisance value settlement' based on the fact that defendants will be required to expend tens or hundreds of thousands of dollars in discovery."    *Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*, No. 12-CV-6781 (RJS), 2018 WL 1596068, at *6 (S.D.N.Y. Mar. 28, 2018) (collecting cases and quoting *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011)).    "[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285."    *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015).

24

There is no evidence in the record suggesting "a pattern of litigation abuses" by Plaintiff.  *Id.*  In this specific case, Defendant asserts that Plaintiff exhibited a pattern of taking unreasonable litigation positions which it never intended to defend and maintaining them until the last minute, solely for the purpose of increasing Howard's litigation expenses.  *See* Mem. [96] at 9-10, 13, 26, 27, 29. But the Court is of the opinion that the record does not reflect this.  Consider, for example, Defendant's Motion [79] to Stay Proceedings.  Plaintiff initially opposed the Motion [79], but as it explained in its Response [82]:

> At the time [of its opposition] Capsa believed that this case could possibly proceed to trial before the conclusion of the IPRs.  This week Capsa learned that based upon the Court's very busy docket of cases, there is a substantial likelihood the IPRs will be resolved prior to this matter proceeding to trial.  Accordingly, in the interest of minimizing the burden on this Court's time and resources as well as those of the parties, Capsa does not oppose the motion to stay this action pending the IPRs of the '668 Patent and the '650 Patent.

Resp. [82] at 1-2.

Moreover, nowhere in the discussions provided to the Court did Plaintiff offer to dismiss its claims for a monetary payout.  *See generally* Ex. [108-3]; Ex. [108-7]; Ex. [108-8]; Ex. [108-22].  When Plaintiff expressed a willingness to dismiss certain claims, it was always contingent on various non-monetary stipulations.  *See* Ex. [108-7] at 1; Ex. [108-8] at 2; Ex. [108-22] at 2.  There is an insufficient indication that Plaintiff brought this suit in an effort to strong-arm Defendant into a lucrative settlement.  *See Joao Control & Monitoring Sys., LLC*, 2018 WL 1596068, at *6 ("While Plaintiff's faith in its patents was clearly misguided, its decision to continue with this suit weighs against the conclusion that this litigation was undertaken

simply to score an easy settlement on the basis of a weak patent."). It is also worth mentioning that the cost of litigation is a two-way street; as much as Defendant was forced to spend money defending itself, so too was Plaintiff required to spend money prosecuting the case.

Ultimately, the Court cannot ascribe ill-motive to Plaintiff based on the record before it. *See Checkpoint Sys.*, 858 F.3d at 1375 (finding no improper motive where there was no showing of abuse or harassment in the record and concluding that the plaintiff was simply exercising its statutory right to defend its patent); *but see SFA Sys., LLC,* 793 F.3d at 1350 (affirming award of attorneys' fees where there was evidence in the record showing that the plaintiff "dismissed its claims . . . once it was faced with the prospect of a trial in which the merits of its claims would be tested," "sued many defendants for infringement of the same patents," and "frequently settled with prior defendants for relatively small amounts").

b.      Plaintiff's Conduct in the Deposition of its Expert

Defendant complains that at the PTAB, "Capsa's counsel violated well-known PTAB prohibitions against coaching expert witnesses during a break in questioning." Mem. [96] at 21. The Office Patent Trial Practice Guide provides that "[o]nce the cross-examination of a witness has commenced . . . counsel offering the witness on direct examination shall not . . . [c]onsult or confer with the witness regarding the substance of the witness' [sic] testimony[.]" Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48772 (Aug. 14, 2012). Defendant claims that following a break in the deposition testimony of Plaintiff's expert witness, Dr. Pinhas Ben-Tzvi ("Dr. Ben-Tzvi"), Dr. Ben-Tzvi returned and "proceeded to destroy

a previously marked exhibit by writing over his prior markup of an exhibit that had supported Howard's position."   Mem. [96] at 21.   Plaintiff says that the conversation between counsel and its expert during the break did not cover any substantive issues and that Dr. Ben-Tzvi had merely asked counsel whether he was allowed to go back and correct earlier statements he made on the record.   *See* Resp. [109] at 25.

First, at this stage, this Court is not the proper forum for airing deposition disputes which arose in a different forum.   If Defendant believed that Plaintiff was violating PTAB rules, it could have brought the matter to the PTAB's attention at that time, as its boards are specifically authorized to "impose an appropriate sanction—including the reasonable expenses and attorneys' fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the witness."   Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48772 (Aug. 14, 2012); *see also* 37 C.F.R. 42.12(a).

Furthermore, it is unclear to the Court whether it should even consider this alleged misconduct in deciding attorneys' fees under 35 U.S.C. § 285.   The Federal Circuit has held that § 285 does not allow a party to recover fees incurred in IPR proceedings, reasoning

> that a district court is particularly well-positioned to determine whether a case before it is exceptional because it "lives with the case over a prolonged period of time."   Were "cases" under § 285 to include IPR proceedings, district court judges would be tasked with evaluating the exceptionality of arguments, conduct, and behavior in a proceeding in which they had no involvement.   Such an inquiry is inconsistent with the rationale articulated in *Highmark* and the deference with which we review exceptionality determinations.

27

*Dragon Intell. Prop. LLC v. DISH Network L.L.C.*, 101 F.4th 1366, 1372 (Fed. Cir. 2024) (internal citation omitted) (quoting *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014)), *cert. denied*, 145 S. Ct. 1176 (2025).   If the Court should not award fees for work done in IPR because it lacks a sufficient degree of "involvement" in those proceedings, *id.*, then it should also not base fee awards on alleged misconduct committed in the same proceedings.

These concerns aside, the Court finds a lack of sufficient evidence of misconduct here.   What Defendant characterizes as destruction of evidence, *see* Mem. [96] at 21, Dr. Ben-Tzvi's sworn testimony contends was simple error correction:

> Q.   Please tell us the contents of your discussion with your attorney during the break.
> A.   Well, basically I asked him about the figure that you gave me, and I told him I might have made a mistake that is in contradiction to my declaration, and if I'm allowed to fix the exhibit . . . ,

Ben-Tzvi Dep. Tr. [95-29] at 101-02.   The forgoing is insufficient for the Court to conclude that sanctionable conduct occurred.

c.   <u>Defendant's Own Conduct</u>

Expanding on Dr. Ben-Tzvi's deposition, Plaintiff posits that the record reflects an overall failure by Defendant to timely raise the issues it now invokes as a basis for attorneys' fees to this Court or the PTAB.   "Howard never invoked the notice protections of the [Federal] Rule [of Civil Procedure] 11 safe harbor provisions during this lawsuit against Capsa, never moved for sanctions to this Court during the lawsuit or to the USPTO during the IPR proceedings, and never filed motions to compel against Capsa."   Resp. [109] at 14.

28

Defendant correctly argues that Rule 11 and § 285 provide independent bases for awarding attorneys' fees and are subject to different standards. *See Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1390 (Fed. Cir. 2017) (reversing denial of attorneys' fees where the court conflated Rule 11 with § 285). And because Defendant communicated its intent to seek attorneys' fees with Plaintiff during litigation, *see* Ex. [95-22] at 3; Ex. [95-9] at 7, the Court will not go so far as to say that Defendant "hid[] under a rock, quietly documenting all the ways it's been wronged, so that it can march out its 'parade of horribles' after all is said and done," *Stone Basket Innovations, LLC*, 892 F.3d at 1181.

But other courts have found it "important that no Rule 11 Motion was ever filed" where "the defendant insist[ed] that th[e] case was objectionably frivolous from its inception and should never been [sic] filed." *Am. Vehicular Scis. LLC v. Autoliv, Inc.*, 405 F. Supp. 3d 728, 742 (E.D. Mich. 2019) (quotations omitted and cleaned up). Similarly here, Defendant insists that most, if not all, of Plaintiff's claims were frivolous at the outset, *see* Mem. [96] at 10, 16, 22, 25, 27; Reply [113] at 4, yet no Rule 11 sanctions were ever sought. This is another factor weighing against an award of attorneys' fees.

## III.   CONCLUSION

In sum, Defendant has not shown that this case is exceptional under 35 U.S.C. § 285, and its Motion [95] for Attorneys' Fees should be denied. To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant

Howard Industries, Inc.'s Motion [95] for Attorneys' Fees is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 11th day of August, 2026.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE

30